1:24MJ10LDA

# AFFIDAVIT OF SPECIAL AGENT LISA A. CRANDALL
# IN SUPPORT OF CRIMINAL COMPLAINT

I, Lisa A. Crandall, having been first duly sworn, do hereby depose and state as follows:

## INTRODUCTION

1. I have been employed as a Special Agent of the Federal Bureau of Investigation ("FBI") since June 2010. I am currently assigned to the FBI's Boston Division, Providence Resident Agency. As an FBI Special Agent, I have investigated federal criminal violations related to, among other things, the on-line sexual exploitation of children, white collar crime, and public corruption. Through my training and experience, I have become familiar with multiple types of digital devices and portable storage devices, to include but not limited to smartphones, computers, laptop computers, tablets, digital cameras, flash drives, USB drives, and external hard drives. In my experience as an FBI agent and former member of the FBI's Evidence Response Team, I have participated in the execution of dozens of search warrants that involved the handling of digital and portable storage devices and the collection of evidence from those devices.

2. I am currently investigating Bruno Francis Ragusa who was born in 1970 ("Ragusa") for wire fraud, identity theft, and aggravated identity theft, respectively, in violation of Sections 1343, 1028(a)(7), and 1028A of Title 18 of the United States Code.

3. I submit this affidavit in support of a criminal complaint charging Bruno Ragusa (YOB 1970) of North Attleboro, Massachusetts with wire fraud, identity theft, and aggravated identity theft, respectively in violation of Sections 1343, 1028(a)(7), and 1028A of Title 18 of the United States Code.

4. The information in this affidavit comes from my personal observations and investigations, my training and experience, other law enforcement agents, records, and other sources as specified in the body of the affidavit. This affidavit does not set

forth the totality of my knowledge about this matter or investigation. I set forth here the information that I believe are necessary to assess the existence of probable cause.

5. Based on the information set forth below, I believe that there is probable cause to believe that

- Ragusa has been fraudulently obtaining sales commissions by affixing the electronic signatures of his clients, *without* their permission or knowledge, to insurance policy applications and payment authorization forms and then electronically submitting those forms to insurers,
- the applications and authorization forms list client personal identification information, including name, date of birth, home address, telephone number, and social security number, and
- Ragusa obtained that personal identification information from his clients earlier when he with their permission submitted other insurance applications.

Accordingly, I believe there is probable cause to believe that Ragusa committed wire fraud, identity theft, and aggravated identity theft, respectively, in violation of Sections 1343, 1028(a)(7), and 1028A of Title 18 of the United States Code.

## PROBABLE CAUSE

### *Background*

6. On August 7, 2023, by order of the Department of Business Regulation for the State of Rhode Island ("DBR"), Ragusa's Rhode Island insurance producer license[1] was temporarily suspended and license revocation proceedings were initiated. That order is attached as Exhibit 1 and incorporated herein. On November 27, 2023, a hearing officer, after taking testimony from witnesses, issued a decision recommending that Ragusa's Rhode Island insurance producer license be revoked. The decision is attached as Exhibit 2 and incorporated herein. On November 28, 2023, by order of the

---

[1] "Insurance producer" is a broad term that includes those who represent insurance carriers in marketing and selling insurance policies to consumers and those who represent consumers in the purchase of insurance policies from carriers.

2

Director of DBR, the hearing officer's decision and recommendation were adopted.[2] See Ex. 2 at 29.

7. The hearing officer found, among other things, that DBR proved "numerous instances where [Ragusa had] signed insurance applications in the names of people who had no knowledge of the applications, had not authorized them, and did not want to purchase the insurance." Ex. 2 at 25. The hearing officer noted that Ragusa "forged his clients' signatures and used personal information he had in his possession from prior purchases of insurance for his clients to make unauthorized purchases of insurance for them." *Id.* at 25-26. The hearing officer reported that "[h]is forgeries are not the type of actions that an insurance producer should engage in even once." *Id.* at 26.

8. As set forth below, I have independently investigated and confirmed pertinent facts described in the referenced DBR documents.

9. As of February 26, 2024, Ragusa's licenses to serve as an insurance agent or broker continue to be active in Connecticut and Massachusetts according to records obtained from insurance regulators in those jurisdictions. Ragusa's Connecticut license expires on December 31, 2024, and his Massachusetts license expires on December 31, 2025.

10. According to records obtained from the Corporations Division of the Secretary of the Commonwealth of Massachusetts, Ragusa is the registered owner of the North Attleboro-based company Atlantic Coast Senior Solutions, Inc. ("ACSS"), and ACSS is located at 424 E. Washington Street, Unit 6, North Attleboro, Massachusetts 02706 (Ragusa's Office). The company's website lists Ragusa as the

---

[2] Ragusa had 30 days to appeal the order to the Rhode Island Superior Court. On January 31, 2024, I checked the Rhode Island Superior Court's docket, through the Rhode Island Judiciary Public Portal (https://publicportal.courts.ri.gov/PublicPortal/), and found no indication of an appeal having been filed.

"Owner/President," posts photographs of him,[3] and states that the company "specialize[s] in Final Expense Life Insurance, Life Insurance, and Debt Freedom." *See* ACSS website at www.atlanticcoastssinc.com (last checked March 7, 2024).

11. Based on my research, I understand final expense insurance to be a form of life insurance that covers end-of-life expenses, such as funeral, memorial, embalming, cremation, and burial costs, and such policies tend to have face values reflective of such costs or reflective of some portion of those costs.

*Great Western Insurance Company*

12. Based on communications with employees of Great Western Insurance Company ("GWIC") and a review of records provided by GWIC, located in Des Moines, Iowa, I learned that since prior to January 2019, GWIC has been providing a variety of insurance products to consumers including life, health, and home insurance policies, and that GWIC has been utilizing MyEnroller, an online tool, to receive insurance policy applications electronically from agents. Moreover, GWIC advised and GWIC records show that from January 2019 to February 24, 2023, Ragusa was authorized to sell GWIC policies and utilize MyEnroller and that Ragusa submitted approximately 206 insurance policy applications to GWIC.

13. GWIC advised that when it approves a final expense insurance policy, it issues an advanced commission to the agent responsible for the sale of the policy. That advanced commission can be paid to the agent before the policy goes into effect. The agent responsible for the sale also receives additional commissions for each month that the policy remains active, namely for each month that the policy holder makes a monthly payment. When policies are cancelled within a short time after approval, the

---

[3] The photographs of Bruno Ragusa on the website depict a person who is consistent in appearance with the driver's license photograph of Ragusa that was obtained from the Massachusetts Department of Motor Vehicles.

agents are required to return the advanced commissions. Where policies are cancelled after that time frame, there is no return requirement.

14. GWIC advised that RAGUSA received $134,660.90 in advanced commission and $2,295.66 in additional commission from GWIC. Based on early policy cancellations, Ragusa presently owes GWIC $70,379.47.

15. From my review of information GWIC provided to Massachusetts state insurance fraud investigators, and records provided by GWIC, company officials in early 2023 became concerned with the volume of applications that Ragusa had submitted to GWIC via MyEnroller over a short time. Between December 5, 2022 and February 9, 2023, Ragusa electronically submitted almost 150 insurance policy applications to GWIC, and some of those applications were submitted just 15 minutes apart.

16. GWIC advised and GWIC records show that in January 2023, agents of GWIC contacted Ragusa and inquired about his application submission volume, and in January 2023, Ragusa emailed the following in response:

> Good afternoon, my apps were done face to face with clients initially, but my iPad doesn't have internet access so after gathering my information I was going back to my office and submitting the e-apps. I am license in RI and MA and that's where all of my clients reside. I boarder [sic] RI so I have easy access over state lines. There is no other state that business has been written. If you have any other questions or concerns, please do not hesitate to contact me.
>
> To follow up with any miscommunication my business is done in the home. However, the reason for multiple apps being submitted one after the other is because my iPad doesn't receive internet. So after gathering information I was going back to the office and submitting the apps through my e[-]app on the portal.

17. GWIC advised that it discovered through review of obituaries that some of the applications submitted by Ragusa were for individuals who had died prior to the application date.

18.     According to information GWIC provided to the Insurance Fraud Bureau of Massachusetts on February 1, 2023, the majority of insurance applications submitted by Ragusa to GWIC included inaccurate banking information or were cancelled, and a large number of the purported applicants were not made aware that the applications were submitted to GWIC.  GWIC also noted that Ragusa requested, as part of the application process, that the issued policies be sent to him for delivery to the applicants, and in speaking with some of the applicants, GWIC determined that they had not received the issued policies from Ragusa.  GWIC attempted to contact those whose applications had been submitted by Ragusa, and those who GWIC was able to reach indicated that they were not aware of the applications submitted in their names and had not spoken to Ragusa at or around the time that the applications were submitted.

19.     GWIC advised that on February 24, 2023, Ragusa was terminated as an GWIC agent, meaning that he was no longer authorized to sell GWIC insurance products.

20.     I obtained from GWIC records of insurance policy applications that had been submitted by Ragusa as well as recordings of GWIC's efforts to contact the associated Ragusa clients.  Ten of those files and the ten associated clients are discussed below.  Based on my investigation, three of the ten individuals – AD, LS, and MM – were deceased at the time Ragusa submitted the policy applications in their names, and the other seven – LL, DB, LB, LF, DD, RC, and RL – all denied knowing that Ragusa had submitted applications in their names with GWIC.

*AD died prior to Ragusa's submission of application*

21.     Based on my investigation, AD died in September 2022, but Ragusa submitted an insurance policy application and payment authorization for AD in January 2023, and Ragusa's submission resulted in GWIC issuing a policy to AD and a commission to Ragusa:

    a.  According to a funeral home obituary, AD of Brockton, Massachusetts died on September 7, 2022.  Using the deceased's name, date of birth, and photograph from the obituary, I retrieved records about AD from the Massachusetts Registry of Motor Vehicles ("RMV").  Those records confirmed AD's dates of birth and provided other personal identification information for AD, including social security number and home address.  The photograph of AD obtained from the RMV was visually similar to the photograph of AD that appeared in the obituary.

    b.  According to GWIC records, on January 3, 2023, Ragusa's MyEnroller account electronically transmitted a life insurance application and credit card authorization for AD to GWIC.  In turn, GWIC issued a life insurance policy, with an effective date of February 3, 2023, to AD and issued a commission of $500 to Ragusa on January 9, 2024.  The application directed that the policy papers were to be sent to Ragusa's address.  AD's purported electronic signature appeared on both the application and the authorization,[4] and Ragusa's purported electronic signature appeared on the application.

    c.  The following personal identification information – all confirmed to belong to AD – appeared on the application:  name, date of birth, home address, and social security number.

  22.  I note that it appears that Ragusa had access to AD's personal identification information prior to AD's death.  According to GWIC's records, on February 8, 2022, roughly seven months prior to AD's death, Ragusa's MyEnroller account electronically transmitted a different insurance application and credit card authorization for AD containing the same personal identification information and credit card information found in the January 2023 application and authorization.

---

[4] On the Great Western insurance applications, the applicants' signatures are electronic signatures consisting of the insured name typed in blue letters, not a cursive signature.

*LS died prior to Ragusa's submission of application*

23. Based on my investigation, LS died in August 2021, Ragusa submitted an insurance policy application and payment authorization for LS in December 2022, and that Ragusa's submission resulted in GWIC issuing a policy to LS and a commission to Ragusa:

    a. According to a funeral home obituary, LS of Warwick, Rhode Island died on August 9, 2021. Using the deceased's name and date of birth from the obituary, I retrieved records about LS from the Rhode Island Department of Motor Vehicles ("DMV"). Those records confirmed LS's date of birth and provided other personal identification information for LS, including social security number and home address. The photograph of LS obtained from the DMV is visually similar to the photograph of LS that appeared in the obituary. Moreover, according to GWIC call logs, a person who identified himself as LS's common-law husband telephoned GWIC on February 2, 2023 to inquire about the GWIC policy issued to LS and to advise that LS had died on August 9, 2021.

    b. According to GWIC records, on December 29, 2022, Ragusa's MyEnroller account electronically transmitted a life insurance application and bank account withdrawal authorization for LS to GWIC. In turn, GWIC issued a life insurance policy, with an effective date of January 28, 2023, to LS and issued a commission of $372 to Ragusa on December 29, 2024. The application directed that the policy papers were to be sent to Ragusa's address. LS's purported electronic signature appeared on both the application and authorization, and Ragusa's purported electronic signature appeared on the application.

    c. The following personal identification information – all confirmed to belong to LS – appeared on the application: name, date of birth, home address, and social security number.

*MM died prior to Ragusa's submission of application*

8

24.     Based on my investigation, MM died in May 2021, Ragusa submitted an insurance application and payment authorization for MM in January 2023, and Ragusa's submission resulted in GWIC issuing a policy to MM and a commission to Ragusa:

a.     According to a funeral home obituary, MM of Brockton, Massachusetts died on May 3, 2021.  Using the deceased's name and date of birth, I retrieved RMV records for MM.  Those records confirmed MM's date of birth and provided other personal identification information for MM, including telephone number and home address.  Additionally, the photograph obtained from the RMV is visually similar to the photo that appeared in the obituary for MM.

b.     According to GWIC records, on January 7, 2023, Ragusa's MyEnroller account electronically transmitted a life insurance application and bank account withdrawal authorization for MM to GWIC.  In turn, GWIC issued a life insurance policy, with an effective date of February 3, 2023, to MM and issued a commission of $420 to Ragusa on January 9, 2023.  The application directed that the policy papers were to be sent to Ragusa's address.  MM's purported electronic signature appeared on both the application and authorization, and Ragusa's purported electronic signature appeared on the application.

c.     The following personal identification information – all confirmed to belong to MM – appeared on the application:  name, date of birth, home address, and telephone number.

*DD did not give Ragusa permission to submit application*

25.     Based on my investigation, Ragusa submitted an insurance application and payment authorization for DD in January 2023, DD had not given Ragusa permission to make these submissions, and Ragusa's submissions resulted in GWIC issuing a policy to DD and a commission to Ragusa:

9

    a.  According to GWIC records, on January 12, 2023, Ragusa's MyEnroller account electronically transmitted a life insurance application and bank account withdrawal authorization for DD of New Bedford, Massachusetts to GWIC. In turn, GWIC issued a life insurance policy, with an effective date of February 3, 2023, to DD and issued a commission of $127.30 to Ragusa on February 3, 2023. The application directed that the policy papers were to be sent to Ragusa's address. DD's purported electronic signature appeared on both the application and authorization, and Ragusa's purported electronic signature appeared on the application.

    b.  The following personal identification information for DD appeared on the application: name, date of birth, home address, phone number, and social security number. Utilizing RMV records, I confirmed that the personal identity information on the application corresponded to DD, an actual person.

    c.  There was a recorded call between GWIC and DD on February 13, 2023. DD identified herself by providing her name, date of birth, and the last four digits of her social security number, all corresponding to personal identification information in the application submitted by Ragusa. DD said she received correspondence from GWIC indicating that a payment had not been accepted. DD said that she did not have any insurance with GWIC and had not signed up for a policy with GWIC. After being advised that Ragusa had signed her up for a GWIC policy, DD said that she had obtained an insurance policy with Columbia through Ragusa, that money was periodically withdrawn from her bank account for that policy, and that she had not heard from Ragusa in three years. At DD's request, GWIC canceled her GWIC policy.

    *DB did not give Ragusa permission to submit application*

  26.  Based on my investigation, Ragusa submitted an insurance application and payment authorization for DB in August 2022, but DB had not given Ragusa permission to make these submissions, and Ragusa's submissions resulted in GWIC issuing a policy to DB and commission to Ragusa:

      a.      According to GWIC records, on August 9, 2022, Ragusa's MyEnroller account electronically transmitted a life insurance application and bank account withdrawal authorization for DB of Attleboro, Massachusetts to GWIC. In turn, GWIC issued a life insurance policy, with an effective date of September 6, 2022, to DB and issued a commission of $222.75 to Ragusa on August 9, 2022. The application directed that the policy papers were to be sent to Ragusa's address. DB's purported electronic signature appeared on both the application and authorization, and Ragusa's purported electronic signature appeared on the application.

      b.      The following personal identification information for DB appeared on the application: name, date of birth, home address, phone number, and social security number. Utilizing RMV records and social security records, I confirmed that the personal identity information on the application corresponded to DB, an actual person.

      c.      GWIC called DB on March 16, 2023, and the call was recorded. DB identified herself by providing her home address, which corresponded to the address information on the application submitted by Ragusa. DB said that she was not aware of having a policy with GWIC. DB said that Ragusa must have obtained that policy without her permission. DB said that she had no idea what Ragusa was doing and "next thing" she knew three different insurance companies were withdrawing money from her bank account. GWIC, which had drawn funds from the account specified in the authorization, refunded the funds to the account.

*LB did not give Ragusa permission to submit application*

27.      Based on my investigation, Ragusa submitted an insurance application and payment authorization for LB in September 2022, but LB had not given Ragusa permission to make these submissions, and Ragusa's submissions resulted in GWIC issuing a policy to LB and a commission to Ragusa:

    a.  According to GWIC records, on September 26, 2022, Ragusa's MyEnroller account electronically transmitted a life insurance application and bank account withdrawal authorization for LB of West Warwick, Rhode Island to GWIC. In turn, GWIC issued a life insurance policy, with an effective date of October 25, 2022, to LB and issued a commission of $718.11 to Ragusa on September 26, 2022. LB's purported electronic signature appeared on the application.

    b.  The following personal identification information for LB appeared on the application: name, date of birth, home address, phone number, and social security number. Utilizing DMV records, I confirmed that the personal identity information on the application corresponded to LB, an actual person.

    c.  GWIC called LB on March 15, 2023, and the call was recorded. LB said that she and her husband have had thousands of dollars taken from their checking accounts by various insurance companies, including GWIC, Amica, and Liberty Bankers, and "it wasn't supposed to be." LB said that in or around September 2022, she and her husband spoke to Ragusa to obtain inexpensive life insurance policies, and that she noticed that after that hundreds of dollars were being taken from her checking account by various insurers. She said that Ragusa had said that she and her husband would each be getting life insurance policies with premiums of less than $35 per month. LB said that she had no knowledge of the GWIC policy and that Ragusa had not advised her that a GWIC policy had been taken out in her name. GWIC, which had drawn funds from the account specified in the authorization, refunded the funds to the account.

*LL did not give Ragusa permission to submit applications*

  28.  Based on my investigation, Ragusa submitted one insurance application and payment authorization for LL in September 2022 and a second in December 2022, but LL had not given Ragusa permission to make either of these submissions, and

Ragusa's submissions resulted in GWIC issuing two separate policies to LL and two separate commissions to Ragusa:

  a. According to GWIC records, on September 26, 2022, Ragusa's MyEnroller account electronically transmitted to GWIC a life insurance application and bank account withdrawal authorization for LL of West Warwick, Rhode Island. In turn, GWIC issued a life insurance policy with an effective date of October 25, 2022 to LL and issued a commission of $1068.75 to Ragusa on September 26, 2022.

  b. According to GWIC records, on December 9, 2022, Ragusa's MyEnroller account electronically transmitted to GWIC a second, different life insurance application and second, different bank account withdrawal authorization for LL. In turn, GWIC issued the second life insurance policy, with an effective date of December 25, 2022, to LL and issued a second commission of $ 389.97 to Ragusa on December 13, 2022.

  c. Both applications directed that the policy papers were to be sent to Ragusa's address. LL's purported electronic signature appeared on both applications and authorizations, and Ragusa's purported electronic signature appeared on both applications.

  d. On or around January 16, 2023, GWIC received two policy cancellation letters, one for the first policy and the other for the second policy. Both letters were purportedly signed by LL, and GWIC cancelled both policies and refunded premiums that had been drawn from LL's bank account.

  e. The following personal identification information for LL appeared on both applications: name, date of birth, home address, phone number, and social security number. Utilizing DMV records, I confirmed that the personal identity information on the applications corresponded to LL, an actual person. Those records also indicated that LL and the aforementioned LB were husband and wife.

f.     GWIC called LL on March 15, 2023, and the call was recorded. GWIC spoke to the LB, the wife of LL.  LB said that since the time that she and LL had first met Ragusa, LL had had a stroke, which had affected his memory.  LB said that LL had not permitted Ragusa to file any of the applications or authorizations that had been submitted in LL's name.  GWIC told LB and LL that on January 16, 2023, the company had received a cancelation letter.  LB said that LL had not signed the policy cancellation letters, as LL had a stroke and LB had been with him around the clock.

### *LF did not give Ragusa permission to submit application*

29.    Based on my investigation, Ragusa submitted an insurance application and payment authorization for LF in December 2022, but LF had not given Ragusa permission to make these submissions, and Ragusa's submissions resulted in GWIC issuing a policy to LF and a commission to Ragusa:

a.    According to GWIC records, on December 29, 2022, Ragusa's MyEnroller account electronically transmitted a life insurance application and bank account withdrawal authorization for LF of West Warwick, Rhode Island to GWIC.  In turn, GWIC issued a life insurance policy with an effective date of January 28, 2023, to LF and issued a commission of $634.50 to Ragusa on December 29, 2022.  The application directed that the policy papers were to be sent to Ragusa's address.  LF's purported electronic signature appeared on both the application and authorization, and Ragusa's purported electronic signature appeared on the application.

b.    The following personal identification information for LF appeared on the application:  name, date of birth, home address, phone number, and social security number.  Utilizing DMV, I confirmed that the personal identity information on the application corresponded to LF, an actual person.

c.    There was a recorded call between GWIC and LF in January 2023. LF identified herself by providing her name, date of birth, and last four digits of her social security number, all corresponding to personal identification information in the

14

application submitted by Ragusa. LF said that she had no idea that a GWIC policy had been taken out in her name by Ragusa. LF said that she had had $130.00 taken out of her bank account by GWIC, and that she would never have wanted so expensive a policy. LF said that she was only aware of a policy Ragusa took out for her with Colonial Life for $35 a month. LF said that she did not know where this idea to get a policy for $130 came from. GWIC returned LF's premium and cancelled the policy.

*RC did not give Ragusa permission to submit application*

30. Based on my investigation, Ragusa submitted an insurance application and payment authorization for RC in January 2023, but RC had not given Ragusa permission to make these submissions, and Ragusa's submissions resulted in GWIC issuing a policy to RC and a commission to Ragusa:

    a. According to GWIC records, on January 9, 2023, Ragusa's MyEnroller account electronically transmitted a life insurance application and bank account withdrawal authorization for RC of Coventry, Rhode Island to GWIC. In turn, GWIC issued a life insurance policy, with an effective date of February 3, 2023, to RC and issued a commission of $1026 to Ragusa on January 9, 2023. The application directed that the policy papers were to be sent to Ragusa's address. RC's purported electronic signature appeared on both the application and authorization, and Ragusa's purported electronic signature appeared on the application.

    b. The following personal identification information for RC appeared on the application: name, date of birth, home address, phone number, and social security number. Utilizing Rhode Island DMV records and social security records, I confirmed that the personal identification information on the application corresponded to RC, an actual person. I note that the address that appeared on the application and authorization submitted by Ragusa was one of RC's previous addresses.

    c. There was a recorded call between GWIC and RC on February 13, 2023. RC identified herself by providing her name, date of birth, and the last four digits

15

of her social security number, all corresponding to personal identification information in the application submitted by Ragusa. RC said that she had no idea why she had received a letter from GWIC as she had never applied for a policy with GWIC. RC said that she did not approve the policy. RC said that she and her partner RL had previously had a life insurance policy with Ragusa that they had canceled.

*RL did not give Ragusa permission to submit application*

31.     Based on my investigation, Ragusa submitted an insurance application and payment authorization for RL in January 2023, but RL had not given Ragusa permission to make these submissions, and Ragusa's submissions resulted in GWIC issuing a policy to RL and a commission to Ragusa:

a.     According to GWIC records, on January 9, 2023, Ragusa's MyEnroller account electronically transmitted a life insurance application and bank account withdrawal authorization for RL of Coventry, Rhode Island. In turn, GWIC issued a life insurance policy, with an effective date of February 3, 2023, to RL and issued a commission of $1,034 to Ragusa on January 9, 2023. RL's purported electronic signature appeared on both the application and authorization, and Ragusa's purported electronic signature appeared on the application.

b.     The following persona identification information for RL appeared on the application: name, date of birth, home address, phone number, and social security number. Utilizing DMV records, I confirmed that the personal identity information on the application corresponded to RL, an actual person. I note that the address that appeared on the application and authorization submitted by Ragusa was one of RL's previous addresses.

c.     There was a recorded call between GWIC and RL on February 13, 2023. RL identified himself by providing his name, date of birth, and the last four digits of his social security number, all corresponding to the personal identification information in the application submitted by Ragusa. RL said that Ragusa had obtained

16

the GWIC policy "fraudulently" with information Ragusa had from a previous policy. RL said that that old information included RL's previous address in West Warwick, Rhode Island, the address at which he and the aforementioned RC lived at the time they first met Ragusa.

## CONCLUSION

32.    Based on all of the foregoing, I submit that there is probable cause to believe that between at least February 8, 2022, to February 3, 2023, Bruno Ragusa committed wire fraud, identity theft, and aggravated identity theft, respectively in violation of Sections 1343, 1028(a)(7), and 1028A of Title 18 of the United States Code.

Sworn to under the pains and penalties of perjury,

_____
Special Agent Lisa A. Crandall
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1. by: **Telephone** (specify reliable electronic means)

| March 11, 2024 | _____ |
| --- | --- |
| Date | Judge's signature |
| **Providence RI** | Lincoln D Almond USMJ |
| City and State | Printed Name and Title |